Herbert, J.,
dissenting. I concur in the first paragraph of the syllabus but must dissent from the remainder and from the judgment.
As to paragraph two of the syllabus, I agree with the principle stated therein that the General Assembly is presumed not to intend any ridiculous or absurd results from the operation of a statute which it enacts, but do not believe that it is the function of this court to construe such statute so as to prevent such results when they are caused chiefly by the dilatoriness of successive appointing authorities. In the present case, the department has been headed by an acting director since October 1956. The principle stated in the second paragraph is well established, but at least equally, if not more so, is the principle stated in paragraph two of the syllabus in the case of Slingluff v. Weaver, 66 Ohio St., 621, 64 N. E., 574, which holds:
*173 “2. But the intent of the lawmakers is to be sought first of all in the language employed, and if the woi’ds be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the lawxnaking body, there is xxo occasion to resort to other meaxxs of intei’pret'ation. The question is not what did the General Assembly intend to exxact, but what is the meaning of that which it did enact. That body should be held to mean what it has plaixxly expressed, and hexxce no room is left for construction.”
Admittedly, Section 3.03, Revised Code, is controlling here.
I cannot consti’uc the word, “occurs,” as it appears in that section to mean “continues to occur” as stated in paragraph three of the syllabus. The conclusion of the fourth paragraph of the syllabus is reached only after extendixxg the meaxxing of “occux's” to “continues to occux\” The majority opinion also indicates that it should be coxxstruod to mean “happen to exist,” following the federal ixxterprctation.
The obvious intent of Section 3.03, Revised Code, is to provide for a reasonably immediate opportuxxity to permit senatorial consideration of appointments requiring confirmation. It would certainly be reasonable, therefore, to construe this section in the sense that a vacancy existing when a new appointing authority takes office “occurs” at that time with l’espect to the new executive. Having in mind the purpose of the section, it would not bo unreasonable to hold, on the facts here, that the vacancy in the office of the Director of Mental Hygiene and Correction “occurred” so far as the incumbent Governor is concerned when he himself took office.
It is not necessary to speculate as to what might happen in the event of a vacancy occurring by death or resignation on the last day of the General Assembly or in other instances. Nor is it necessary to speculate as to how any proposed appointmexxt sent to the Senate for confirmation dui’ing a session may be considered by that body. Such situations are not before us.
I am persuaded more to the reasoning of the Attorney General in Opinion No. 1870, dated March 21, 1958, which follows and supports a number of earlier opinions, going back as far as. 1923.
The majority opinion herein has the effect, in my view, *174 of amending Section 3.03, Revised Code, which is the function of the General Assembly when in its discretion such section needs amendment. At least this decision will leave the problem as to whether further clarification is needed to that body where it belongs.
Matthias and Bell, JJ., concur in the foregoing dissenting opinion.